CASE 22—PETITION ORDINARY—MARCH 14.

| 97 119 |
| e112 250 |
| 97 119 |
| 114 571 |

# Farson, Leach & Co. v. Board of Commissioners of Sinking Fund of City of Louisville.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. MUNICIPAL CORPORATIONS—LIMITATION OF INDEBTEDNESS.—When bonds are issued by a city for the express purpose of retiring or taking the place of other outstanding bonds of the city, the amount represented by them is not to be considered as an increase of the city's indebtedness in estimating the amount of indebtedness which it may incur under the limit fixed by sec. 158 of the constitution.

2. SAME.—Even if the indebtedness represented by the bonds in question here had in fact increased the aggregate indebtedness of the

120 KENTUCKY REPORTS. [Vol. 97

Farson, Leach & Co. v Board of Commissioners of Sinking Fund of
City of Louisville.

city to an amount in excess of the constitutional limit, yet the
fact that it was authorized under an act passed prior to the
adoption of the constitution would protect it under a proviso of
sec. 158 of the constitution, to the effect that an indebtedness in
excess of the limit fixed may be contracted "when the same has
been authorized under laws in force prior to the adoption of the
constitution."

3. SAME—REPEAL OF STATUTE.—The act of May 22, 1890, by which
the mayor of the city of Louisville was directed to cause to be
issued bonds of the city to a certain amount for the purpose of
calling in certain bonds theretofore issued, was not repealed by
sec. 3010 of the Kentucky Statutes.

4. A CITY MAY MAKE ITS BONDS PAYABLE IN GOLD, although the act
authorizing them to be issued is entirely silent upon that subject.
There is embraced by every such grant of power not only the
powers conferred in express words, but those fairly implied in, or
incident to, the powers expressly granted.

M. S. BARKER FOR APPELLANT.

My clients are anxious to take the bonds when it shall have been
judicially determined that they are legal. The question as to
their validity is submitted to the court. (Const. of Ky., sec. 158;
Ky. Stats., sec. 3010; Aydelott v. South Louisville, 16 Ky. Law
Rep., 166.)

H. S. BARKER FOR APPELLEES.

1. The act of 1894 (Session Acts, 1894, p. 18) does not repeal act of
1890.
    Repeals by implication are not favored. (Endlich on Int. of
Statutes, sec. 210; Commonwealth v. Mason, 82 Ky., 256; Common-
wealth v. Weller, 14 Bush, 218.)
    A general statute does not repeal a special statute by implica-
tion. (Endlich on Int. of Statutes, sec. 223.)

2. The city was authorized to make the bonds payable in gold. (Jud-
son & Co. v. City of Bessemer, 29 English and American Corpora-
tion Cases, p. 5; Ashley v. Board of Supervisors, 60 Fed. Rep., 55;
Moore v. City of Walla Walla, 60 Fed. Rep., 961.)

3. There is nothing in the constitutional objections, as the right to re-
fund the bonds of cities is specially provided for in sec. 158 of
the constitution.

JUDGE EASTIN DELIVERED THE OPINION OF THE COURT.

By the provisions of an act of the legislature of Ken-

tucky, approved March 30, 1880, the commissioners of the sinking fund of the city of Louisville, appellees herein, were charged with the payment of the floating indebtedness of that city existing on the 1st day of January, 1879, and, for the purpose of paying same, the general council of said city was authorized and directed to cause to be issued and turned over to said commissioners, for sale, the coupon bonds of said city to the amount of one million dollars, bearing interest at the rate of five per cent. per annum, one-half of said bonds to be so issued that they might be called in and paid off at any time after ten years from their date, and the other half, at any time after twenty years from their date.

Under an ordinance passed by the general council of said city in pursuance of said act, bonds of the city to the amount above named, bearing date May 1, 1880, and conforming to the provisions of said ordinance and said act, were issued and delivered to appellees for the purpose above mentioned, and were sold by them.

For the purpose of enabling appellees to call in and pay off the one-half of the bonds so issued which were made payable at the expiration of ten years from their date, the legislature of Kentucky passed another act, which was approved May 22, 1890, whereby the mayor of the city of Louisville was authorized and directed to cause to be issued other bonds of said city to the amount of five hundred thousand dollars, payable twenty years after date, and bearing interest at the rate of four per cent. per annum, and to deliver said bonds, when issued, to the appellees, to be by them sold at the best price obtainable, but not at less than par, and to apply the proceeds thereof, when sold, to the payment of the bonds issued under said act of March 30, 1880, or to exchange them, in whole or in part, for the bonds issued un-

der this last mentioned act, if terms of exchange could be agreed upon.

The bonds authorized by the act of May 22, 1890, amounting to the sum of five hundred thousand dollars, were accordingly issued in conformity with said act, and were delivered to appellees, who subsequently offered the same for sale, and on November 7, 1894, received a proposition in writing from appellants, offering to purchase the entire issue of bonds at par, which proposition was, on the same day, accepted in writing by appellees.

Under said contract of sale, the bonds were tendered to appellants, and payment therefor was demanded by appellees, but refused, and suit having been brought to enforce the performance of said contract, the lower court adjudged that the same be enforced, and from that judgment this appeal is prosecuted.

The grounds upon which appellants base their refusal to comply with their offer are, as we understand from the answer filed by them in the court below, as follows, to-wit:

1st. That, as the act of May 22, 1890, under which these bonds were issued, was not acted upon, and as none of said bonds were sold, until after the adoption of the present State constitution, which went into effect on September 28, 1891, and some of the provisions of which are supposed to forbid the issuing of these bonds, therefore they are void as being issued in violation of the State constitution.

2d. That this act of May 22, 1890, was repealed by the general act subsequently passed with reference to the sinking fund of the city of Louisville, and found under the head, "Sinking Fund" at page 1023, and being sec. 3010, of the Kentucky Statutes, and

3d. That there was no authority in the mayor or in ap-

pellees to make these bonds payable in gold, and that both
principal and interest thereof being made payable in gold
coin of the United States, they are, for that reason, void.

Briefly considering these objections in their order, we
need only say that we can not agree with appellants in their
contention that the issuing of these bonds is violative of
any provision of the constitution of this State.

The argument for appellants on this branch of the
case is based largely upon the assumption that the creation
of this indebtedness of five hundred thousand dollars, by
the issue of bonds to that amount, would increase the aggre-
gate indebtedness of the city of Louisville to an amount in
excess of the constitutional limit of ten per centum of the
assessed value of the taxable property therein, as fixed by
sec. 158 of the constitution, for cities of the first class, to
which the city of Louisville belongs.

In reply to this argument, it is only necessary to call at-
tention to the fact that the certificates of the officials of the
city of Louisville in charge of these departments, viz.; of the
secretary and treasurer of the sinking fund, of the city
comptroller and of the city assessor, purporting to give the
respective amounts of the bonded indebtedness, the float-
ing indebtedness and the assessed value of the taxable prop-
erty in said city as of the date on which this contract for
the sale of these bonds was made, all of which certificates
were filed and are to be considered in evidence in this case,
conclusively show that, even if the indebtedness represented
by the bonds here in issue were to be considered as an ad-
ditional item of indebtedness, still this would not make an
aggregate indebtedness nearly equal to ten per centum of
the assessed value of the taxable property in said city.

This argument must, therefore, fail because it is based on a mistaken assumption of fact.

But, even if this were not so, it seems to us that as these bonds are expressly issued for the purpose of retiring or taking the place of other outstanding bonds of said city, the amount represented by them is not to be considered as an increase of the city's indebtedness. in estimating the amount of indebtedness which it may incur under the constitutional limit above referred to, but that it is expressly excluded from such calculation by the closing sentence of said sec. 158 of the constitution, which is in these words, to-wit: "Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality."

And furthermore, even if the indebtedness represented by these bonds had in fact increased the aggregate indebtedness of said city to an amount in excess of the constitutional limit of ten per centum of the assessed value of the taxable property therein, yet the fact that it was authorized under the act of May 22, 1890, passed prior to the adoption of the constitution, would seem to protect it, under the language of another clause in said sec. 158 of the constitution, which is in these words, to-wit: "Provided, any city, town, county, taxing district or other municipality may contract an indebtedness in excess of such limitations (ten per centum of the assessed value of taxable property in this case), when the same has been authorized under laws in force prior to the adoption of this constitution."

A question very similar to this was recently considered by this court in the case of Aydelott v. South Louisville, reported in 16 Ky., Law Rep. 166, in which the validity of

certain bonds of South Louisville, issued subsequently to
the adoption of the present constitution, under an act of
the legislature passed prior to the adoption of the con-
stitution, was questioned upon the same grounds urged
here, and in that case the bonds were held valid and unaf-
fected by the provisions of the constitution. We refer to
that case, without quoting from the opinion, as settling
the question now under consideration here.

In the next place, as to the contention of appellants that
this act of May 22, 1890, under which these bonds were is-
sued, was repealed by sec. 3010 Kentucky Statutes, it is
sufficient to say that, not only is there nothing in this gen-
eral act, found in sec. 3010, inconsistent with the provisions
of the act of May 22, 1890, but the very first clause of said
sec. 3010 is in these words, to-wit: "The sinking fund to pay
the bonded debt of the city is hereby continued as now
established by law."

There was, therefore, no repeal of this special act by sec.
3010, Kentucky Statutes.

The only other ground upon which it is claimed that
these bonds are invalid is based upon the fact that they are
made payable, both principal and interest, in gold coin of
the United States, while there is nothing said in the act
authorizing their issue, as to the kind of currency or money
in which they are to be made payable.

The precise question here raised was passed upon by the
Supreme Court of Alabama, and that court, in its opinion
sustaining the power of the city to make its bonds payable
in gold, although the act authorizing them was entirely
silent on the subject, uses this language, to-wit:

"Express and general power to issue negotiable bonds,
in the absence of legislative restriction, carries the implied

or incidental power to make them payable generally; that
is, in currency which is constitutionally a legal tender, or
payable in the particular coin which constitutes the legal
and commercial standard by which the value of other kinds
of currency is measured." (Judson v. City of Bessemer, 87
Ala. 240.)

See also Ashley v. Board of Supervisors, etc., 60 Fed. Rep.
55, and Moore v. City of Walla Walla, 60 Fed. Rep. 961.

It seems to us that in every grant of power of this kind,
the legislature may be presumed to have left something
to the discretion of the grantee of the power where the ex-
ercise of discretion would necessarily or naturally be inci-
dental to a full and complete execution of the power in all
its details: In other words, there is comtemplated in and
embraced by every such grant not only the powers con-
ferred in express words, but those fairly implied in or in-
cident to the powers expressly granted. In determining
the extent of the power, therefore, some regard should be
had to the object of the grant.

As said in the case of Smith v. City of Newbern, 70 N. C.
14, in discussing the powers of municipal corporations un-
der legislative grants: "If we say they can do nothing
for which a warrant could not be found in the language of
their charter, we deny them, in many cases, the power of
self-preservation, as well as many of the means necessary
to effect the essential object of their creation; hence they
may exercise all the powers within the fair intent and pur-
pose of their creation which are reasonably necessary to
give effect to powers expressly granted, and in doing this
they must have the choice of means adapted to ends, and are
not confined to any one mode of operation."

Looking now at the powers granted in the case before us,

and the objects and purposes of the same, we find that they were among other things, and mainly, to issue its negotiable securities, running over a period of twenty years, for the purpose of borrowing money by the sale thereof at their face value and carrying a low rate of interest. These bonds are to be offered on a market in which there is current more than one circulating medium, but one which is regarded more stable and less subject to fluctuations than any other, which is the recognized standard of value, and which is the equivalent of and corresponds in value with that which the borrower is to receive for its bonds. Can there be any legal reason why the borrower, in case it should seem, in the exercise of a sound discretion, both prudent and advantageous to stipulate for the payment of the loan in that particular medium of circulation, so that the exact measure of the contract—what is to be paid by the borrower on the one hand and what is to be received by the lender on the other—may be fixed and understood by both contracting parties, should not be allowed to so contract? It seems not to us; and it further seems to us that this is purely a matter of contract which should be and is entrusted to the discretion of the borrower, who is thus authorized to go into the open market to negotiate the desired loan, and who might, under some circumstances, be seriously embarrassed, or possibly rendered wholly unable to negotiate his securities, if denied this privilege of contracting as to these details as an individual might do. We therefore see no valid objection to these bonds by reason of their having been made payable in gold, and the judgment of the lower court is affirmed.