162 U.S. 291 (1896)
WOODRUFF
v.
MISSISSIPPI.
No. 18.
Supreme Court of United States.
Argued March 9, 10, 1896.
Decided April 18, 1896.
ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.
*297 Mr. Lawrence Maxwell, Jr. and Mr. Calderon Carlisle for plaintiffs in error. Mr. Marcellas Green and Mr. S.S. Calhoun filed briefs for the same.
*298 Mr. Frank Johnston, Attorney General of the State of Mississippi and Mr. J. Hubley Ashton for defendants in error.
Mr. William G. Yerger and Mr. W.P. Harris filed briefs for the Louisville, New Orleans and Texas Railway Company, defendant in error.
MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.
The Supreme Court of Mississippi construed these bonds as obligations payable in gold coin, and held that the power to borrow money conferred on the levee board of Mississippi, district No. 1, did not authorize that corporation to borrow gold coin or issue bonds acknowledging the receipt thereof and agreeing to pay therefor in the same medium, and that the bonds were void for want of power in that particular. If by this adjudication a right possessed by plaintiffs in error, as holders of bonds, under the Constitution and laws of the United States was necessarily denied, then this court has jurisdiction to revise the judgment on writ of error. A definite and distinct issue was raised by the ground of demurrer, on which the decision of the court proceeded, and if that issue was an issue as to the possession of a right under the Constitution and laws of the United States, then the denial of that right gives jurisdiction. And it appears to us that such an issue was presented. Plaintiffs in error claimed that the bonds were payable in money of the United States. Defendants claimed they were payable in a particular kind of such money, and, because so payable, were invalid. The issue in either aspect involved the determination of rights of plaintiffs in error under the Constitution and laws of the United States, and was disposed of adversely to them.
In Trebilcock v. Wilson, 12 Wall. 687, where a note held by plaintiff in error was payable by its terms in specie, and he claimed that he was entitled to have it paid in gold or silver dollars of the United States, which the state court decided he was not, the writ of error was maintained on the ground of the denial of a right under the Constitution.
*299 In Maryland v. Railroad Company, 22 Wall. 105, in which the State had made certain advances for the railroad company in gold and sought judgment accordingly and the state court held that it was only entitled to recovery in currency, no objection was raised to the jurisdiction of this court to review the judgment.
In the case at bar the inquiry as to the medium in which the bonds were payable, and, if in gold coin, the effect thereof, involved the right to enforce a contract according to the meaning of its terms as determined by the Constitution and laws of the United States, interpreted by the tribunal of last resort, and, therefore, raised questions of Federal right which justified the issue of the writ.
The levee board was created a body corporate and expressly authorized to borrow money and to issue negotiable instruments therefor. It was thus endowed in order to enable it to effectuate the objects and purposes of its creation. It issued bonds whereby it acknowledged that it was indebted in so many dollars in gold coin and promised to pay the specified sums at a designated date with interest.
The general rule is that those powers which are within the intent and purposes of the creation of a corporation, and essential to give effect to the powers expressly granted, may be exercised as necessarily incident thereto, and that a discretion exists in the choice of the means to accomplish the required result, unless restricted by the terms of the grant. The power to borrow money was expressly granted, unaccompanied by any definition of the word "money," which might operate as a restriction on the power, and, according to the general rule, if there were more than one kind of money, a discretion as to the particular kind would be necessarily incident to the execution of the power granted and might be exercised by the corporation. At the time these bonds were issued the money of the United States consisted, under the decisions of this court, of gold and silver coin and United States notes. Gold coin was in every respect unlimited in its legal tender capacity, but all were equally valid as money of the United States.
*300 Although the Supreme Court of Mississippi conceded that gold coin was "money," it insisted that when the bonds were issued such coin was "of much greater value than the circulating medium, consisting of United States Treasury notes and national bank notes," as the court judicially knew; that "all debts payable in `dollars' generally were, as now, solvable in legal tenders, but an obligation payable in gold coin can be discharged only according to its terms;" that in authorizing the issue of these bonds, "and in the use of the term `money' the legislature must be supposed to have meant in the act cited that money which constituted the basis of the general business of the country and was a legal tender for the payment of debts;" and that, consequently, the bonds were void for want of power. Notwithstanding the disclaimer, this conclusion denied the exercise of any discretion by the corporation to borrow one kind of money of the United States on the ground that that particular kind had ceased in fact to be money and had become a commodity.
Doubtless the word "money" is often used as applicable to other media of exchange than coin. Bank notes lawfully issued and actually current at par in lieu of coin are treated as money, because flowing as such through the channels of trade and commerce without question. United States Bank v. Bank of Georgia, 10 Wheat. 333; Miller v. Race, 1 Burrow, 452. And it would seem that it was in this sense that the Supreme Court regarded the use of the word, for though it assumed that the property of being legal tender was an essential attribute of money, yet it included national bank notes, which, though receivable at par in payment of government dues except duties, and payable by the government at par except for interest on the public debt and in redemption of the national currency, and also payable and receivable as between national banks themselves, Rev. Stat. §§ 5182, 5196, had not been declared legal tender "in payment of all debts, public and private, within the United States, except for duties on imports and interest on the public debt," as United States Treasury notes had been, Rev. Stat. § 3588.
These bonds were contracts for the payment of dollars and *301 not for the delivery of bullion; nor were they made expressly payable in coin.
If the legislature had in terms authorized the corporation to borrow currency only, and to issue bonds payable in currency only, that would have presented a different question, but the language used embodied no such express limitation, and there could be no implication that the power was other than the power to borrow money of the United States. But it is said that, as it was held in Judson v. City of Bessemer, 87 Alabama, 241, that "express and general power to issue negotiable bonds, in the absence of legislative restriction, carries the implied or incidental power to make them payable generally, that is, in currency, which is constitutionally a legal tender, or payable in the particular coin which constitutes the legal and commercial standard by which the value of other kinds of currency is measured," and that although the act authorizing the city of Bessemer to issue bonds was silent on the subject, the city had power to make them payable in gold; and by the Court of Appeals of Kentucky, in Farson v. Board of Commissioners, 30 S.W. Rep. 17, that municipal bonds were not void, because the principal and interest was made payable in gold coin of the United States, when the act authorizing their issue and sale did not specify the medium in which they were to be made payable; so the Supreme Court of Mississippi was at liberty to hold the contrary in placing a construction on the law of that State. Conceding this to be so, the question of jurisdiction remains unaffected, for in the former cases the right of the holders of municipal obligations to demand under the Constitution and laws of the United States payment thereof in money of the United States was recognized, while in this case that right was in effect denied.
The Supreme Court of Mississippi was of opinion that the bonds evidenced an indebtedness created in gold coin, and that they were solvable in the same medium, and held that the legislature intended to limit the power to borrow and to promise to pay, to another kind of money of the United States. But this was to impose a limitation on the power, not expressed, but by implication, and that implication involved a Federal *302 question. For the power to borrow money, simply, meant the power to borrow whatever was money according to the Constitution of the United States and the laws passed in pursuance thereof, and the power to issue negotiable bonds therefor included the power to make them payable in such money. This the law presumed, and to proceed on an implication to the contrary was to deny to the holders of these bonds, subsequent to their purchase, a right arising under the Constitution and laws of the United States.
But it was only by deciding that these bonds were payable in a particular kind of money of the United States, and that this kind, though money in law, had ceased, as the court assumed, to be money in fact, that the state court was enabled to hold them void for want of power, and if that premise were incorrect, the conclusion, whether in itself right or wrong, would not follow.
Now these bonds were not expressly payable in gold coin. It is true that as they acknowledged an indebtedness in gold coin, and as the coupons were payable specifically "in currency," the argument is not unreasonable that the corporation intended the purchasers to expect payment in the money in which the indebtedness was stated to have been contracted; but the agreement to pay the designated sums did not specify any particular kind of money, and the obligation was to pay what the law recognized as money when the payment was to be made. The bonds were, therefore, legally solvable in the money of the United States, whatever its description, and not in any particular kind of that money, and it is impossible to hold that they were void because of want of power.
In Bull v. Bank of Kasson, 123 U.S. 105, 112, the question was raised whether certain bank checks for the payment of "five hundred dollars in current funds," were negotiable, and Mr. Justice Field, delivering the opinion of the court, said: "Undoubtedly it is the law that, to be negotiable, a bill, promissory note or check must be payable in money, or whatever is current as such by the law of the country where the instrument is drawn or payable. There are numerous cases where a designation of the payment of such instruments in *303 notes of particular banks or associations, or in paper not current as money, has been held to destroy their negotiability. Irvine v. Lowry, 14 Pet. 293; Miller v. Austen, 13 How. 218, 228. But within a few years, commencing with the first issue in this country of notes declared to have the quality of legal tender, it has been a common practice of drawers of bills of exchange or checks, or makers of promissory notes, to indicate whether the same are to be paid in gold or silver, or in such notes; and the term `current funds' has been used to designate any of these, all being current, and declared, by positive enactment, to be legal tender. It was intended to cover whatever was receivable and current by law as money, whether in the form of notes or coin. Thus construed, we do not think the negotiability of the paper in question was impaired by the insertion of those words."
In Maryland v. Railroad Company, 22 Wall. 105, it was held that, although since the legal tender acts an undertaking to pay in gold might be implied under special circumstances and be as obligatory as if made in express words, yet that the implication must be found in the language of the contract, and could not be gathered from the mere expectations of the parties.
In this case the language of the contract as to payment created no such obligation, and no doubt as to its meaning was raised by the extraneous fact that gold was not everywhere in circulation when the bonds were issued.
Without pursuing the subject further it is enough that by their terms these bonds were payable generally in money of the United States, and that, this being so, the conclusion of the Supreme Court of Mississippi, that they were otherwise payable, was erroneous. The bonds, therefore, were not void on the ground stated, even assuming that ground to be tenable; and we think the decision as to the medium of payment reëxaminable here because amounting to a denial of the right of plaintiffs in error to be paid in money of the United States, by implying a limitation contrary to the controlling presumption arising under the Federal laws and decisions. Under those laws and decisions there was more than one description *304 of money of the United States, and hence the presumption was that where no one kind of money was specified the bonds were payable in any kind; but this, and the claim based thereon, was denied.
As the case was determined by the state Supreme Court on the single ground to which we have referred, we shall not discuss the effect and validity of the subsequent legislation brought under review by the bill, or any of the other questions suggested by counsel.
Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.
MR. JUSTICE FIELD concurring.
I have also some observations to make upon this litigation. The case comes before us on error to the Supreme Court of the State of Mississippi. The complainants below, the plaintiffs in error here, commenced a suit in the Chancery Court of Hinds County, in that State, to enforce a trust and a lien upon certain lands therein, as holders of bonds of the levee board of the State, district No. 1, by an act of the legislature of March 17, 1871, under which the bonds were issued. The bill of complaint alleged that Amos Woodruff, trustee, the German Bank of Memphis, Tennessee, and B. Richmond were owners and holders of a large number of bonds issued by the levee board of the State of Mississippi, district No. 1, and that the bonds were issued and negotiated by the board under the act entitled "An act to redeem and protect from overflow from the river Mississippi certain lands described, approved March 17, 1871." The language of the statute authorizing the issue of the bonds is as follows:
"SEC. 9. Be it further enacted, That for the purposes aforesaid, and to enable them to carry out the purposes of this act, the said board of levee commissioners shall have power to borrow money, and to that end may issue the bonds of said board to the amount of one million of dollars, in such sums and denominations, not less than one hundred dollars each, as the said board may prescribe; which bonds shall be signed by the *305 president and countersigned by the treasurer of said board, and be made payable to order or bearer, in not less than two nor more than ten years after the first day of January, 1871, and shall bear a rate of interest not exceeding eight per cent per annum, for which interest coupons may be attached, payable at such time and place as the board may contract. Said bonds shall be negotiated as promissory notes or bills of exchange, and may be sold and negotiated in any market in or out of the State, on the best terms that can be obtained for the same; but in no case shall any of them be negotiated or sold at a greater discount than ten per cent."
By the act, as stated in the bill, a special tax was levied upon all the lands in said district protected by the levees to be built by the board, and provision was made for its collection.
By section 10 of the act, as also stated in the bill, it was provided "that the charges and assessments, fixed, levied and made as aforesaid, by the act, should be, as they were from time to time collected, and they were thereby constituted a special fund and trust, to be used by said board; first, in the payment of any bonds that might be sold or used as before provided under the act, and of money that might be borrowed under its provisions; secondly, for the payment of any other debts or liabilities of said board, and when collected the same should be paid into the treasury of said board for the purposes aforesaid."
Under this statute the board of levee commissioners, as stated in the bill, was organized, and issued a large number of bonds, aggregating in amount six hundred thousand dollars, and payable to bearer. The bonds recited the act under which they were issued, and expressly stipulated that the interest coupons attached were payable in the currency of the United States, but the principal of the bonds was payable in gold coin.
The bill was exhibited by complainants as owners and holders of a large number of bonds thus issued and negotiated. It alleged that the act of the legislature referred to imposed a specific tax in rem on each acre of land (with few exceptions) lying in the levee district No. 1, in order to pay the *306 bonds and coupons; that a large amount of the lands were sold under the act for the delinquent taxes in the year 1872 and the succeeding years, until 1876, and in default of buyers, were struck off to the treasurer of the levee board and duly conveyed to him as such. That from 1876 to 1883 there were no sales to the treasurer, but all lands sold as delinquent were struck off for the state, county and district No. 1 levee taxes to the State of Mississippi, and conveyed to it by one deed. That the State of Mississippi, in 1876, abolished the levee board of district No. 1 as constituted, and made the state auditor and treasurer ex officio levee commissioners its successors, and vested the titles of all lands held by the levee board in them to be administered by them. The bill alleged further that all such lands were held by the State in trust for the bondholders under the act of March 17, 1871.
The bill asked that the trustees, who administered the trust and who had not yet accounted, should be required to discover the status of the trust estate, and how it was administered by them, and that upon such discovery relief be granted by enforcing the trust; that the sales and conveyances made by the trustees in violation of the trust be declared void, and that such purchasers be held to an account of the trust estate so far as it had come into their hands, and that the lands be subjected to the tax chargeable against them under the act of 1871, and the tax be held as a special fund to pay the bonds held by the complainants and others.
The defendants demurred to the bill upon the ground, among other reasons assigned, that the act of the levee board in making the bonds payable "in gold coin" was ultra vires, and the bonds therefor invalid.
The demurrer was sustained, and the complainants appealed.
I cannot concur in the decision of that court. In my judgment no transaction of commerce or business, or obligation for the payment of money that is not immoral in its character and which is not, in its manifest purpose, detrimental to the peace, good order and general interest of society, can be declared or held to be invalid because enforced or made payable in gold coin or currency when that is established or recognized *307 by the government. And any acts by state authority impairing or lessening the validity or negotiability of obligations thus made payable in gold coin are violative of the laws and Constitution of the United States.
Upon this subject I will presume to cite some of the expressions of Justices of this court, as to the effect of such obligations, used when questions respecting the currency of the country were under consideration in what are known as the legal tender cases.
In speaking of the views of the framers of the Constitution, on the subject of money, it was said that "at that time gold and silver moulded into forms convenient for use, and stamped with their value by public authority, constituted, with the exception of pieces of copper for small values, the money of the entire civilized world. It was added that these metals divided up and thus stamped always have constituted money with all people having any civilization, from the earliest periods in the history of the world down to the present time. It was with `four hundred shekels of silver, current money with the merchant,' that Abraham bought the field of Machpelah, nearly four thousand years ago. This adoption of the precious metals as the subject of coinage, the material of money by all peoples in all ages of the world, as further stated, had not been the result of any vagaries of fancy, but was attributable to the fact that they of all metals alone possessed the properties which are essential to a circulating medium of uniform value."
"The circulating medium of a commercial community," said Mr. Webster, "must be that which is also the circulating medium of other commercial communities, or must be capable of being converted into that medium without loss. It must also be able not only to pass in payments and receipts among individuals of the same society and nation, but to adjust and discharge the balance of exchanges between different nations. It must be something which has a value abroad as well as at home, by which foreign as well as domestic debts can be satisfied. The precious metals alone answer these purposes. They alone, therefore, are money, and whatever else is to perform the functions of money must be their representative and capable *308 of being turned into them at will. So long as bank paper retains this quality it is a substitute for money. Divested of this nothing can give it that character." 3 Webster's Works, 41.
In accordance with the doctrine thus expressed, I am of opinion, as stated, that no commercial or money transaction, not immoral in its character or detrimental to the general interests of society, can be held or declared to be invalid because it is enforced or made payable in gold coin or currency established or recognized by the government; and, therefore, that the judgment of the Supreme Court of Mississippi, declaring that the bonds of the levee board made payable in gold coin were, for that reason, invalid, cannot be sustained, and that its judgment to that effect should be reversed.
MR. JUSTICE PECKHAM, with whom concurred MR. JUSTICE BREWER and MR. JUSTICE WHITE, dissenting.
I find myself unable to concur in the opinion of the court herein as to our power to review the judgment of the state court, and I must, therefore, dissent from the conclusion arrived at in this case.
The legislature of Mississippi gave certain authority to the levee commissioners to borrow money and to issue bonds therefor. They issued bonds by virtue and solely by virtue of that act. They so worded the bonds as to render it a matter of controversy whether the principal was, on the face of the bonds, payable only in gold coin or in any lawful money of the United States. The state court held that the legislature did not, in the statute passed by it, authorize the levee commissioners to issue bonds payable in gold coin, and that these bonds were so payable and were, therefore, void as unauthorized by the legislative enactment. This seems to me a matter of local law only, and I cannot see that its decision involves any Federal question. This court has held that parties may contract for the payment of an obligation in gold or in any other money or commodity, and it must then be paid in the medium contracted for. Bronson v. Rodes, 7 Wall. 229; *309 Trebilcock v. Wilson, 12 Wall. 687. This right applies to a State or municipality as well as to an individual.
If the legislature had in terms provided that the bonds should only be issued payable in legal tenders, there could, as it seems to me, be no pretence that such a provision would be illegal or involve a violation of any Federal right.
The corporation was the creature of the State and had only such functions as the State chose to confer on it. Although it be true that the State is absolutely without power to control the right of individuals to contract for such lawful money of the United States as may seem to them best, certainly no such want of authority obtained with reference to the right of a State in granting a charter to a corporation to affix such restrictions as it deemed best. As the individual could exercise his right to contract for any lawful money of the United States free from state control, so the State had the like freedom of action in making her own contracts. It follows that in delegating to one of its creatures the power to contract, the State could limit that power to such kind of lawful money as was considered wise. The exercise by the State of this unquestioned authority in creating her own corporation deprived no one of an existing right and interfered with no Federal authority. The mere decision of the state court that the corporation had misused or exceeded its powers under its charter was a purely state question. Had the state court given force to any subsequent law, which it was claimed impaired the obligations of the contract, a different view would control. But as it did not, as it solely held that the corporation had exceeded its authority under the state law, I am at a loss to see the slightest Federal question.
The Mississippi court construed the bonds as obligations payable in gold coin, and it also held that the levee commissioners were not authorized to issue bonds so payable. Whether the meaning of the contract was arrived at from the plain language of the bonds, or was an inference or implication to be drawn from all the language used therein, the decision was, in either case, nothing but a decision of a question of contract in regard to which the state court *310 had the right to finally decide, and we are bound by that decision.
It is said that if by this adjudication a right possessed by plaintiffs in error as holders of bonds, under the Constitution and laws of the United States, was necessarily denied, then this court has jurisdiction to review the judgment on writ of error. This may be admitted, but I deny that the case at bar presents any such feature. The argument that plaintiffs in error make is that they claimed the bonds were payable in money of the United States, while defendants claimed they were payable in a particular kind of money, and, because so payable, were invalid. The grounds of demurrer to the bill of plaintiffs in error were that the bonds were void as calling for payment in gold coin and that the levee board had no power to issue them in that form. The question was as to the power of the board to issue bonds payable in gold coin, which depended upon the statute of the State, and the question whether the bonds were so payable was one of construction of the language used in the bonds. Simply to claim that money due under a contract is payable in money of the United States, does not make a claim under the Constitution or laws of Congress. What kind of money the contract is payable in depends upon its language, and that raises no Federal question.
The case of Trebilcock v. Wilson, (supra,) does not aid the plaintiffs in error. In that case the defendant claimed a right under the Constitution to demand and receive payment of his note in specie according to the contract, and this was denied him, and a decree entered cancelling the mortgage given as collateral security for the note. This court reviewed the decision on the ground that a right claimed by the defendant under the Constitution was decided against him by the state court.
In Maryland v. Railroad Co., 22 Wall. 105, the question of jurisdiction was not raised or noticed. The opinion puts the rights of the parties entirely upon the language of the contract, and there was no claim that the meaning of the contract was governed by any law of Congress or by any provision of the Constitution.
*311 All the arguments as to the powers of corporations to borrow money or to give bonds, or as to the meaning of the state statute and the extent of the power it granted by the authority to borrow money, are arguments as to the construction of the state statute and the authority of this corporation, and are not in any particular, as it seems to me, of a Federal nature.
Again, it is said that the power to borrow money, simply, means the power to borrow whatever is money according to the Constitution of the United States and the laws passed in pursuance thereof; and the power to issue negotiable bonds therefor includes the power to make them payable in such money. This, it is urged, the law presumed, and to proceed on an implication to the contrary founded upon language contained in the bonds themselves, which it is said was indefinite, was to deny to the holders of these bonds, subsequent to their purchase, a right arising under the Constitution and laws of the United States. Whatever presumption the law may make, based upon the grant of a power to borrow money, as to the right to make the obligation given therefor payable in lawful money generally, the presumption is of no force in the face of a contract to pay only in some particular medium, and whether that contract is to be found expressed in so many words and in plain and perfectly unambiguous language, or is to be inferred or implied from all the language which is used in the contract, is unimportant and immaterial. That it may be implied has been held in Maryland v. Railroad Co., 22 Wall. 105. Whether the implication does arise from the language used is not a Federal question, and the decision of the state court is final.
We may think the power given by the State of Mississippi to its corporation by the language it used was of a general nature, authorizing the corporation to make payment in any money, yet the state court decides that the language employed gave no authority to issue bonds payable in gold coin. There is no claim under an act of Congress or of the Constitution in such case and no claim under either was in any way denied.
We come back to the proposition, therefore, that when parties *312 make a contract on that subject it is for the court to say what the contract means, and it seems to me that is not a Federal question, although the court is only able to arrive at a conclusion as to what the contract means by an examination of its whole language, and by drawing inferences or implications therefrom as to what its true meaning is. The nature of the question does not change according as the contract upon which the right rests is plainly or ambiguously stated. Nor does the right to construe the state statute depend upon the condition that the state court shall construe it, as we think, correctly. It is the same kind of a question at all times, and that is, what do the statute and contract mean? What they mean is a question for the state court alone.
While under the laws of Congress there are several kinds of money, gold and silver coin and legal tender notes, yet the decision of the state court does not deny this or refuse to give effect to those laws. The decision is in entire harmony with them, and proceeds upon the assumption of their validity.
When it is said that the power to borrow money was expressly granted, unaccompanied by any definition of the word "money" which might operate as a restriction on the power, such statement is of course based upon the language used in the statute. It is not necessary that the definition of the word "money" need be given in so many words. Whether upon the whole language of the statute (if there were more than one kind of money) there was a discretion given to the commissioners to say as to which particular kind of money the bonds should be payable in, is a question as to what power the commissioners were granted by that statute, and that question is to be determined by the state court, which decides as to the meaning of the state law, and there is no question of any right dependent upon the Federal Constitution or upon any of the laws of Congress. The state court has denied no right derived from either. It has simply construed a statute of its own State. In holding that the implication to be derived from the act of the State was that the power was to borrow money of the United States, is it not plain that this court assumes to construe the meaning of the state statute and *313 in a manner differing from that given it by the state court? How would it be a different question if the legislature had in terms authorized the corporation to borrow currency only? In either case the question would simply be a construction of the state statute, in the one case from plain language used therein, and in the other from a reading of the whole act and a decision derived therefrom as to the actual meaning of the state law. In both cases the decision is entirely the same in its nature, and in both it is a decision of a local question into which there does not enter any feature of a Federal question. The decision of this court that the bonds were on their face solvable in money of the United States whatever its description, and were, therefore, valid, seems to me so plainly a decision as to the meaning of a contract in opposition to that taken by the state court, where the decision of the latter tribunal is conclusive upon us, that I cannot give assent to it.
I think the writ should be dismissed.