HILLSBOROUGH COUNTY ET AL., APPELLANTS, VS. WILLIAM
B. HENDERSON AND CHARLES WRIGHT, APPELLEES.

1. Counties desiring to issue bonds must comply with the statutory provisions regulating such issue.

2. A resolution for the issuance of bonds by a county, which stipulates that the bonds shall bear not more than four per cent. interest per annum, without fixing a definite rate, is not in compliance with the statutory requirement that the resolution determine the rate of interest to be paid.

3. Assuming that a resolution for county bonds for two designated purposes, under section 591 of the Revised Statutes, should state the amount of bonds required for each purpose, a resolution providing for a gross amount of bonds for the two purposes is sufficient in this respect where one of the purposes is the funding of the indebtedness of the county.

4. The statutory authority to issue bonds given counties by sections 591 et seq. Rev. Stats. includes the right to make the bonds payable in gold coin of the United States of the present standard weight and fineness.

This case was decided by Division B.

Appeal from the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*Barron Phillips, Jno. P. Wall, P. O. Knight, F. M. Simonton* and *Thomas Palmer*, for Appellants.

*Sparkman & Carter*, for Appellees.

MAXWELL, J.

The board of county commissioners of Hillsborough county, proceeding under sections 591-593 of the Revised Statutes, in August, A. D. 1901, passed a resolution for the issue of county bonds as follows:

"Be it resolved by the board of county commissioners of Hillsborough county, First: That it is expedient and for the best interest of the county that county bonds be issued by the board of county commissioners for said county, to the amount of four hundred thousand dollars, payable thirty years from their date, and bearing interest at a rate of not more than four per centum per annum, such interest payable semi-annually, both principal and interest payable at Tampa, Florida, or the city of New York, N. Y.

Second: That said bonds be issued for the purpose of constructing macadamized and other hard surfaced highways in said county, and to fund the outstanding indebtedness of said county.

Third: Notice is, therefore, hereby given that an election will be held by the legal voters of said county on the eighth day of October, A. D. 1901, at the several places in said county where the last general election was held; that such election shall be so held to determine by a majority of the legal voters of said county voting at said election whether said bonds shall be issued by said board for said county, and the form of the ballot at such election shall be 'For bonds' or 'Against bonds.' "

This resolution was published in the several newspapers in the county as provided by law, and an election held, resulting in a majority of votes in favor of the bond

issue. The board of county commissioners thereafter prepared bonds of said county to the amount of $400,000 bearing interest at the rate of four per cent. per annum, and containing a provision that they were payable in gold coin of the United States of America of the present standard weight and fineness. The sale of these bonds was advertised and a resolution passed by the board accepting the bid of the defendants Seasongood and Mayer, who offered $380,260, and accrued interest for the entire issue.

The bill of complainants was thereupon filed to restrain the issue of said bonds for various alleged irregularities in the proceedings upon which the proposed issue was based. The temporary injunction granted was afterwards dissolved except in so far as it enjoined the issue of bonds payable in gold coin, and as to this feature was made perpetual. From this decree both complainants and defendants appeal.

One of the objections made to the proposed issue of bonds is that the resolution adopted and submitted to the voters was not in accordance with section 591 Revised Statutes, as amended by Chap. 4711, acts of 1899, which provides that the resolution shall determine the rate of interest to be paid on the bonds. The resolution submitted provided for bonds "bearing interest at a rate of not more than four per centum per annum, with interest payable semi-annually." It is essential to the right of the county to issue bonds that the provisions of the statute regulating such issue shall be substantially complied with, and if the resolution in question does not determine the rate of interest which the bonds shall bear, it is fatally defective. State ex rel. Stanford v. School Dist. No. 1 of Cascade County, 15 Mont. 133, 38 Pac. Rep. 462.

Is the provision that the interest shall not exceed a certain rate a compliance with the requirement that the rate shall be determined? To determine is defined as meaning "to ascertain definitely," or "to settle," and it is in this sense that the word is used in the statute. A provision which leaves for future determination the precise rate of the interest to be paid, merely limiting the range of the discretion to be exercised by those who shall ultimately fix it, can not be said to determine the rate.

It does not cure the defect that the voters have ratified the resolution in its indefinite form. They can vote only upon such resolution as the board sees fit to submit to them. A majority of them may be willing to waive their right to have the terms of the bonds definitely fixed before submission to them, as provided by law, and to intrust these matters to the board for future determination, rather than have no issue of bonds. But the statute has vested the board with no authority to ask such a waiver, nor has it authorized the voters to delegate to the board, without the check of a subsequent ratification of its action, matters which by the terms of the statute must *after determination* be endorsed by popular vote. If the board can lawfully reserve for future determination by itself the interest which the bonds shall bear, so can it reserve any or all of the other matters required to be fixed in the resolution which it submits for ratification. The statute can not be so nullified.

In conformity with this rule it has been held by several courts that the authorization of bonds not to exceed a certain amount is not a compliance with a requirement that the amount to be issued shall be specified. State *ex rel.* Lexington & St. L. R. R. Co .v. Saline County Court, 45 Mo. 242; Smith v. Mayor & Council of Dublin,

113 Ga. 833, 39 S. E. Rep. 327; Mercer County v. Pittsburgh and Erie R. R. Co., 27 Pa. St. 389. Other cases holding that the resolution for the issue of bonds must determine those things required by law to be fixed therein, and not merely present an alternative for future decision are Elyria Gas & Water Co. v. City of Elyria, 57 Ohio St., 374, 49 N. E. Rep. 335; Monadnock R. R. v. Peterborough, 49 N.. H. 281; State ex rel. Gardner v.. Roggen, 22 Neb. 118, 34 N. W. Rep. 108. See, also, Cincinnati, Wabash and Michigan R. R. Co. v. Wells, 39 Ind. 539; Detroit Eel River, and Illinois R. R. Co. v. Bearss, Ibid. 598.

The maximum rate of interest remitted by the resolution providing for these bonds is so low that it is possible that the form of the resolution in stating 4 per cent. as a limit, rather than as a fixed rate of interest, did not materially affect the election. This, however, is mere matter of conjecture, and does not affect the law of the case. The fixing of a maximum rate implies the possibility of issuing the bonds at a less rate, and in principle we perceive no difference between this resolution and one fixing a greater maximum rate with a correspondingly greater range. of discretion. to be exercised in determining that to be adopted. The bonds have not been issued, the rights of no purchasers for value are involved, and none of those considerations exists which impel courts to overlook irregularities in the endeavor to protect such purchasers.

A further objection made to the resolution adopted by the board is that it does not state the amount of bonds required for each of the purposes for which the issue is to be made. There are but two purposes named in this resolution, one the building of highways and the other the funding of the indebtedness of the county; and if the

amount required for one of these is fixed there is no uncertainty as to the amount designed for the other purpose. The amount of bonds required for funding purposes is determined by the amount of the outstanding indebtedness of the county (Baker v. City of Seattle, 2 Wash. 576, 27 Pac. Rep. 462), and the adoption of the resolution as framed leaves in the county officials no unauthorized discretion as to the application to be made of the proceeds of the bonds.

It is also urged against the bonds in question that they provide for payment in gold coin of the United States of America of the  present standard  weight and  fineness. This stipulation is for payment in that which is lawful money of the United States, legal tender for all debts, and the courts almost without exception hold that the right conferred by statute upon public corporations to issue bonds authorizes the issue of bonds so payable.  More v. City of Walla Walla, 60 Fed. Rep. 961; Packwood v. Kittitas County, 15 Wash. 88, 45 Pac. Rep. 640; Pollard v. City of Pleasant Hill, 3 Dill 195; Farson, Leach & Co. v. Board of Com'rs. of Sinking Fund, 97 Ky. 119, 30 S. W. Rep. 17; Hielbron v. City of Cuthbert, 96 Ga. 312, 23 S. E. Rep. 206; Skinner v. City of Santa Rosa, 107 Cal. 464, 40 Pac. Rep. 742, S. C. 29 L. R. A. 512; Kenyon v. City of Spokane, 17 Wash. 57, 48 Pac. Rep. 783; Judson v. City of Bessemer, 87 Ala. 240, 6 South. Rep.  267;  Ghiglione v. City of Ft. Worth, (Tex.) 47 S. W. Rep. 740; Young v. March, 93 App. Div. Sup. Ct. of New York, 61;  Winston Montg. & E. R. Co. 2 Wood 606; Woodruff v. Mississippi, 162 U. S. 291, .... Sup. Ct. Rep. ......

The only cases which have been brought to our attention holding the contrary view are Burnett v. Maloney,

97 Tenn. 697, 37 S. W. Rep. 689, S. C. 34 L. R. A. 541, where two judges out of five dissented; Woodruff v. State, 66 Miss. 298, 6 South. Rep. 235, afterwards reversed by the Supreme Court of the United States in 162 U. S. 291, .... Sup. Ct. Rep. ....; and Cincinnati v. Anderson, decided by a Circuit Court in Ohio. In Woodruff v. State, the United States Supreme Court reversed the State court in holding that the bonds involved were payable in gold, and it was, therefore, not necessary to the determination of the case that they should decide whether gold bonds could be issued, but as a *dictum* the court intimates that the power existed.

Many of the cases cited above involve the right of cities to issue such bonds, and it is urged that as the powers of countries are more restricted than those of cities, those decisions are not authoritative in this case. This distinction exists as to many of the powers exercised by cities. The power, however, of both municipal corporations proper and quasi corporations such as counties to issue bonds depends upon express statutory grant of authority, and there is nothing in the organization or the purposes for which the respective bodies are created, which requires this power when conferred to be construed as authorizing bonds payable in gold in the one case and not in the other.

Other irregularities are alleged in complainants' bill, but there is no reason to presume that the same questions will arise in any subsequent proceedings which may be had for an issue of bonds by Hillsborough county. We therefore do not discuss them further than to say that the decision of this court in the case of the City of Tampa v. Salamonson, 35 Fla. 446, 17 South. Rep. 581, does not, in

our opinion, conclude the question whether it would be a ground for injunction against the issue and sale of bonds below par, that the board, while the bond election was advertised and pending, adopted a resolution that they should not be sold for less than their par value.

The decree of the court below is reversed with directions that the court enter a decree perpetually enjoining the proposed issue of bonds.