## WELLINGTON W. CARTER *v.* ROBERT COX.

1. STANDARD OF VALUE—SPECIE BASIS—INSTRUCTIONS.—In an action to recover damages for the non-delivery of cotton, to be delivered at a future day, where the contract was general, it is not necessary to enable the plaintiff to recover, that he should prove the specie value of the cotton at the time, but it is sufficient to show the value in U. S. currency ; and to instruct the jury that before the plaintiff can recover in such action, it is necessary he should prove the specie value of U. S. cur-rency, is erroneous.

2. LEGAL TENDER.—There is nothing in the legal tender act of congress, author-zing a distinction between a legal tender for the payment of debts, on the one hand, and a standard by which to determine the value of commodities on the other. To hold that the value of property shall be estimated upon a specie basis, and yet that a judgment obtained upon such estimate may be discharged by legal tender notes, would be an absurdity.

3. CONTRACTS—SPECIAL—GENERAL.—Contracts are presumed to be made with reference to the law existing at the time. But contracts may be predicated upon a specie basis, and will be so enforced, if clearly expressed in the contract. If not so expressed, the contract will be presumed to have been made with reference to legal tender notes.

4. LEGAL TENDER ACT—CONSTRUCTION.—Although the legal tender act does not, in express words, declare that these notes shall be a standard of value, yet, in declar-ing in the first place that they shall be a legal tender, it has done what is equiva-lent thereto.

Error to the circuit court of Amite county. SMILEY, J.

The plaintiff in error assigned the following errors:

1st. The court below erred in giving the instructions asked for by the defendant.

2d. The court erred in refusing to grant the plaintiff a new trial as moved by him, the verdict being contrary to law and the evidence.

*Lamkin & Hurst*, for the plaintiff in error.

We are bound to presume that Carter, the agent of plaintiff, was mistaken as to the time of demand. The facts of his being the agent of plaintiff, and having in his possession the contract, is conclusive of the question as to the time of demand, and of his authority to make it, and of the duty of the defendant to deliver according to his contract.

The supreme courts of fifteen states have decided that the issue of legal tender notes is within the power of the government. The supreme court of the United States has recently decided that a contract payable in coin can be enforced by verdict and judgment in coin; and further, that if the contract is silent as to the kind of money, that legal tender notes can be used.

*E. Safford*, for the defendants in error.

The question before this court is whether greenbacks are the standard of value of commodities. Whatever may be the legal tender for the payment of debts, money, *i. e.* specie, is the only standard of the value of commodities. Bouvier's Law Dic., title, "Money." It was so recognized before the adoption of the constitution of the United States, and the power granted therein to congress to "coin money," etc., cannot be construed as empowering that body to declare and make anything else but money the standard of value of commodities. Congress has never attempted to make the government promises to pay money or a standard of value. The act of congress of the 25th February, 1862, chapter 33 Statute at Large, vol. 2, p. 315, declares that treasury notes shall be receivable in payment of all taxes, etc., etc., and shall be lawful money and a legal tender in payment of all

debts within the United States, except, etc. There is no declaration as to the rate or value at which these notes are to be received. They are lawful money and a legal tender only for the specific purposes, and in the class of cases enumerated in the act. In the first section of the act it is declared, " and such United States notes shall be received the same as coin, at their par value, in payment of any loans that may be hereafter sold or negotiated by the secretary of the treasury," thus designating but one single class of cases wherein they are to be received as coin. The maxim *expressio unius est exclusio alterius* applies in support of our position. Hepburn v. Griswold, 8 Wallace, 609.

*Geo. L. Potter*, on same side.

The second instruction properly assumed that under the contract sued on, it was necessary to prove a demand of the cotton prior to the suit and after the contract was endorsed to plaintiff. The contract was to deliver cotton to Silverstein & Carter, sued as endorsee. In such a case the defendant would not have been bound to deliver to Silverstein until demand was made, and clearly he was not bound to deliver to the endorsee until notified of the transfer of the contract.

As shown by the declaration, and by the endorsement, the contract was transfered on the 9th of March, 1865, and the only proof of a demand was made by witness for plaintiff, who says he made demand " about the 1st of March, 1865, or latter part of February," a date before the plaintiff owned the contract. Such a demand was premature, and the proof did not establish the default alleged in the declaration. It is true the witness says he made demand as agent for plaintiff, and then had possession of the contract, but does not show it had then been endorsed. Upon such proof the jury was justified in finding for defendant, and if so, this court would not reverse even if the first instruction was wrong. The question is, considering the whole case, was the verdict correct?

TARBELL, J.:

In May, 1867, the plaintiff brought this action to recover

of defendant, damages for failure to perform an undertaking, of which the following is a copy :

"Amite County, December 19th, 1863.

" I am to deliver to W. Silverstien, seven thousand, six hundred and fifty pounds of cotton, being the balance due by me to L. Alcus & Co., July 25th, 1863, on agreement then made to deliver to L. Alcus & Co., one hundred bales of cotton, weighing each four hundred and fifty pounds."

[Signed]                               " Robert Cox."

[U. S. Stamp.  Endorsed.]

" For value received, I endorse and transfer the within to W. W. Carter.   March 9th, 1860."

"W. Silverstein."

To the declaration, defendant filed several pleas :

1. *Non assumpsit*, etc.

2. That the defendant was in possession of the cotton mentioned in the contract, sued on as a bailee, without compensation ; and before any demand for said cotton was made of him by plaintiff, the cotton was destroyed by fire, without any negligence on the part of the defendant, and by reason thereof, defendant could not deliver the same to plaintiff.

3. That the only consideration of the several contracts set forth in the declaration, was, and is the payments to him, by L. Alcus & Co., of a certain nominal sum in paper currency, commonly called " Confederate money," being notes issued by the pretended government, known as the " Confederate States," for the purpose of carrying on the rebellion, against the government of the United States.

The plaintiff denied the allegations of the second plea, and demurred to the third plea.

The demurrer was sustained by the court.

The issue joined was tried by a jury, resulting in a verdict for defendant.

A motion for a new trial was made on the following grounds :

1. Because the verdict of the jury is contrary to the law and evidence.

2. Because the court erred in giving defendants instructions, and in excluding evidence offered by plaintiff.

This motion the court overruled, and the defendant excepted.

Upon the trial, after reading the undertaking and endorsement given above, plaintiff introduced W. Silverstien, who testified that he was the payee in the contract sued on; that sometime before the making of the contract sued on, defendant and L. Alcus & Co., made a contract for one hundred bales of cotton, upon which, defendant delivered to them, eighty-two bales; that upon settlement between L. Alcus & Co. and Cox, there was found due them from him, 7,650 lbs.; that witness agreed to exchange with Alcus & Co., cotton that he had in St. Helena parish, La., which being agreed to by Cox, the latter then entered into the contract sued on with witness, which was a settlement of amount due Alcus & Co. from said Cox.

Plaintiff then proved by H. Fox, that he was one of the firm of L. Alcus & Co.; that the firm paid Cox for one hundred bales cotton, in Confederate money, it being understood between them that when the cotton was weighed, that, at a fixed price per pound, if L. Alcus & Co. had not paid enough, they would pay the balance found due, at the same price per pound; and if the cotton did not weigh enough, Cox was to make the difference good. That upon the receipt of eighty-two bales of the one hundred bales, it was found that there was a balance of cotton necessary to make up that paid for, of seven thousand six hundred and fifty pounds; that the cotton which Cox had, except the eighty-two bales, not being in condition for market, Alcus & Co. refused to receive it— when Silvestien agreed to exchange it for other cotton; that Cox, as a settlement with Alcus & Co., executed the contract sued on; that Alcus & Co. paid Cox in Confederate money, then of value, the value of the cotton, in that currency.

W. W. Carter, for plaintiff, testified that, as agent of plaintiff, he made demand of defendant, for the cotton in the contract sued on, sometime about the first of March or last of

February, 1865; that, at the time of demand, he was acting as agent for plaintiff, and had in his possession the contract sued on; that defendant refused to deliver any part of the cotton claimed; that cotton, at time of demand, was worth forty to forty-five cents in United States currency, commonly called " greenbacks."

The court gave the following instructions for defendant: " That before plaintiff can recover in this action, he must prove the value of the cotton, in specie; and if there is no evidence before them of the specie value of cotton, or the specie value of United States treasury notes, called 'greenbacks,' then the jury can find no verdict for plaintiff; for want of such proof, and they must find for the defendant. That, before plaintiff can recover in this case, he must prove a demand for the cotton in controversy, on the defendant, after the contract was transferred to him; and if the jury believe from the evidence that the contract was transferred on the ninth day of March, 1865, and that the demand in the name of the plaintiff was made before the said transfer made to said plaintiff, Carter, then Carter had no right to make the demand, and there was no breach of the contract on the part of defendant, Cox; and if the jury believe from the evidence, there was no other demand proved after plaintiff became the owner of the contract, then they will find for defendant; to which plaintiff excepted."

Having brought his case to this court, the plaintiff alleges the following as causes of error: 1. That the court erred in giving the instructions for defendant. 2. That the verdict was contrary to law and the evidence. 3. That the court erred in overruling the motion for a new trial.

In regard to the first instruction for defendant, we hold the law to be well settled. The counsel for defendant submits, that, under the legal tender act of Congress, a distinction is authorized between a legal tender for the payment of debts on the one hand, and a standard by which to determine the value of commodities on the other. Conceding, for the argument the constitutionality of the act, counsel says, in sub-

stance, that while United States currency, commonly denomi-
nated "greenbacks," is a legal tender for the payment of
debts, in their common acceptation; yet, in fixing the meas-
ure of damages for the non-performance of contracts, or in
estimating the value of property, specie, or gold and silver,
is the only proper standard of estimation. Or, to state the
proposition of counsel more briefly, it is: 1. That United
States currency is a legal tender for the payment of debts;
but, 2. It is not a legal standard of the value of property, or
for the estimation of damages for the breach of contracts.

Regarding the law on this subject as settled by the adju-
dications of the courts of the United States, and of fifteen
or more states of the Union, we do not propose to discuss it
at any length. The view sought to be enforced, could not
obtain, save upon the theory of the unconstitutionality of the
legal tender act. To say that the value of property shall be
estimated upon a specie standard, and yet, that a judgment
obtained upon such an estimate may be discharged by legal
tender notes, if not an absurdity, would be impracticable,
unnecessary, and unjust. The distinction is not tenable upon
any ground. Its admission would be not merely a serious
interference with the practical workings of a law of the
federal government, but a direct attack upon the constitu-
tionality of the law, and upon the constitutional currency of
the country, now accepted as such by the entire body of the
people, and by the judiciary and authorities of nearly all the
states composing the nation, the more serious and dangerous,
because partial and insiduous.

It would be unjust to parties, because the rule would first
reduce the verdict and then pay the judgment in notes.

We are referred by counsel, first, to Bouvier's definition of
money, which this author says is "gold, silver, and some of the
less precious metals, which in the progress of civilization and
commerce, have become the common standard of value; in
order to avoid the delay and inconvenience of regulating their
weight and quality wherever passed, the governments of the
civilized world, have caused them to be manufactured in

certain portions and marked with a stamp which attests their value; this is called money." Counsel add that "money, from time immemorial, has been, by the customs and usages of all civilized nations, the recognized standard of value of commodities. * * * Its value is fixed, certain and permanent, and no commercial revulsions, or even the revolutions by which the mightiest political organizations are overthrown, can make a dollar anything but a dollar. * * * It therefore furnishes a standard of value which is stable and permanent." And counsel denies the power of congress to make anything but specie money.

In reference to these views we submit a few authorities showing the origin, progress, and establishment of specie as money, its liability to abuses or fluctuations, and that its value consists in its endorsement by the supreme authority or prerogative of the nation, as with a paper currency, which may also be money when stamped with the impress of law. Tomlin, quoting Co. Litt., 207, says, "money is that metal, be it gold or silver, which receives authority by the prince's impress to be current; for as wax is not a seal without a print, so metal is not money without impression." Quoting 1 Hale's Hist. P. C., 188, he further says: "money is said to be the common measure of all commerce through the world, and consists principally of three parts: the material whereof it is made, being silver or gold, the denomination or intrinsic value given by the king by virtue of his prerogative, and the king's stamp thereon." Again, "it belongs to the king only to put a value, as well as the impression, on money; which being done, the money is current for so much as the king hath limited." 2 Inst., 575.

We learn from Smith's "Wealth of Nations," that "money was originally stamped coin, and afterwards, anything that generally takes its place in buying and selling." This author also says that, "to prevent abuses, it was found necessary to fix a public stamp upon certain quantities of such particular metals as were in those countries commonly made use of to purchase goods."

Webster gives this definition of money:

" 1. Coin, stamped metal, pieces of metal, usually gold, silver or copper, stamped by public authority, and used as the medium of commerce.

" 2. Hence any currency usually and lawfully employed in buying and selling as the equivalent of money, as bank notes, and the like."

For many purposes bank notes are money. 1 G. & J., 380; 3 Mass., 405; 14 Mass., 122; 3 N. H., 333; 17 Mass., 560; 7 Cow., 662; 4 Pick., 74; Brayt., 24. So also, are checks. 4 Bing. S..C. Rep., 179., 13 E. C. L. R., 295. And likewise negotiable notes, 3 Mass., 405.

The currency of Great Britain, like that of the United States, is regulated by law. The statutes of the former, particularly. 6 Geo. IV., ch. 79, enacts among other provisions,

" 1. That all receipts, payments, contracts, and dealings, shall be made according to such currency, and shall be held to be so made, unless the contrary be proved.

" 2. That contracts may be made according to any foreign currency.

" 3. That debts, etc., are by implication of law declared within the meaning of law."

The laws of congress on the same subject have been based somewhat upon those of Great Britain, and with the like objects in view. One of the most familiar principles to the profession, and one that may be accepted as an axiom, is that contracts are made with reference to the law at the time of their execution. This rule applied to the case at bar is conclusive of the subject under consideration. So it is the law of this country, as declared by the supreme court of the United States, that contracts may be predicated upon a specie basis, and will be so enforced, if clearly expressed in the contract. If not so expressed, the contract will be presumed to have been made with reference to the legal tender notes, or other currency established by law, as in the case before us·

· The counsel secondly quotes and invites our attention to the law of congress of February 25, 1862, chapter 33, § 1, which declares that such notes shall be receivable in payment of all taxes, internal duties, excises, debts and demands

of every kind due to the United States except duties on imports, and of all claims and demands against the United States of every kind whatever, except for interest upon bonds and notes, which shall be payable in coin, and shall also be lawful money and a legal tender in payment of all debts, public and private, within the United States. The argument of counsel is based upon the absence of an express declaration in the act that these notes are to be a standard of value. In view of the general acceptation of this law of congress by the federal and state courts, and by the state governments, as providing a national currency for all purposes, in the legal tender notes, we only suggest that the law, upon its face, declares these notes, first, lawful money; and second, a legal tender. To hold these notes to be less than this would be to impair their usefulness and value, and to infringe upon the powers of the national government, if not to trifle with its authority.

It is true, we are wedded to a specie currency which has had its growth and perfection in the wants of commerce, but it is not improbable that the same civilization, which has created a gold and silver circulating medium, may demand a change, even if the actual necessities of commerce do not already require a larger volume of circulation than the precious metals can supply.

That a specie currency has been immemorial and universal, that it is liable to no abuses or fluctuations, that it is immaculate and unchangeable, that it has any fixed value as money except by law and common consent, which can also substitute any other currency or money, are delusions, which it is time, were dispelled. 8 Wallace ; 41 Miss.

In regard to the second instruction, the testimony relating thereto seems not to have been fully developed. The witness, Carter, testifies positively, and is not contradicted, that he demanded the cotton mentioned in the contract of defendant, as the agent of plaintiff; that he had the contract of which plaintiff was the owner then with him, and that defendant refused to deliver the property. Apparently the refusal was

absolute and unconditional. If the agent exhibited the contract and disclosed his agency, and if the defendant placed his refusal upon the ground that the contract was not assigned to plaintiff, it does not appear. The verdict upon the testimony set out in the record, and upon the second instruction, was contrary to the law and evidence. As the case, however, must be sent back because of the first instruction, we need not notice the second instruction further, save to observe that upon another trial we presume the evidence bearing upon the transfer of the contract to plaintiff and the demand upon the defendant will be more fully presented. The judgment of the court below is reversed and the cause remanded.

SIMRALL, J., not sitting in this case.