AUGUST STEDENFELD et al., appellants,

*v.*

LILLIAN STEDENFELD, respondent.

[Decided October 21st, 1920.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"The bill of complaint calls for a construction of the will of Almeda Stedenfeld, the defendants joining in the prayer of the bill. The following is a copy of the whole will, except the date and attestation:

" 'I, Almeda Stedenfeld, being of sound mind, memory and understanding, do make and publish this my last will and testament in manner following, that is to say.

" 'The one half (½) of my estate is to go to my son William S. Stedenfeld, and if he should die before his wife, she is to get One Hundred and Fifty Dollars ($150.00) only from this one half (½) of the estate the balance to be divided equally between my stepson August Stedenfeld and my two (2) granddaughters Almeda and Anna Marie Stedenfeld.

" 'To my stepson August Stedenfeld I leave one quarter (¼) of my estate.

" 'The balance one quarter (¼) of the estate to be divided equally between my two (2) granddaughters Almeda and Anna Marie Stedenfeld and my cousin Lena Lartz, share and share alike.

" 'Any cash left by me outside of the estate, after all bills, etc. are paid, to go to my son William S. Stedenfeld.

" 'If there should be any disagreement at the reading of this will, the party disagreeing is to receive nothing, their share to be divided equally between the others named in this will, share and share alike, with the exception of Williams wife, she to receive only one hundred and fifty ($150.00) Dollars, she to receive this if she outlives her husband, and should be alive when this will is read.

" 'All my household effects, furniture, etc. I leave to my son William S. Stedenfeld he can sell or dispose with them the way he thinks best.'

"All the beneficiaries named in the will, survived the testatrix and her son William S. Stedenfeld, died more than a year and

16

a half after her death, leaving a will duly probated, devising and bequeathing his whole estate to his widow, the defendant Lillian Stedenfeld, who survived him.

"The complainants claim that under the will of Almeda Stedenfeld, an absolute estate did not vest in William S. Stedenfeld, but that he took a fee subject to be divested by his death at any time before his wife, while the defendant Lillian Stedenfeld claims that the words 'if he should die before his wife' refer to the husband's death in the lifetime of the testatrix, and that the ordinary rule favoring the immediate vesting of estates must be applied in the construction of this will.

"There is no provision in the will expressly defining the quantity of the estate which the several beneficiaries shall take, but under *Comp. Stat. p. 5873 § 36*, they all take absolute estates in fee, except only William S. Stedenfeld, should the words just quoted qualify his estate.

"The mind of the testatrix was concerned with the division and distribution of her whole estate and was naturally fixed upon the situation with reference to the objects of her bounty, as it would exist after her death. Nearly all the estate she had to dispose of came from her deceased husband. William S. Stedenfeld was her only child, but there were her husband's descendants by his first wife to consider, namely, his son, August, and his grandchildren, Almeda and Anna Marie, daughters of his deceased son Daniel. She evinces an intention to divide her whole estate equitably among those who would naturally be entitled to it, showing a not unnatural preference for her own son, by giving him half of her estate. Standing by itself, without limiting words, the gift to him is absolute without a doubt. Did the testatrix, by the use of the words 'and if he should die before his wife,' intend to refer to the estate she had given her son and qualify or limit it to the one for whom she had a natural preference, when she attached no limitation to the estates she gave to those who were not of her blood? There is nothing in the context of the will, or the evidence, which discloses a reason for such intention, and it is my opinion that when she used the words in question she was not referring to or limiting the devise to her son, but that she was making a gift to her daughter-in-law in

case William should predecease his mother. What she had in mind was a disposition of her estate in case William should predecease her, because without this provision and a bare devise to William, he having no children, his share would lapse and pass by the statute of descent. By the lapsing of this share, William's wife would receive nothing and she wanted to be sure her daughter-in-law would be remembered, and that if her son did not live to take, her estate would go to her step-son and step-grandchildren. That the testatrix meant death in her lifetime is evidenced by the subsequent clause relative to what should happen in case of a disagreement or contest over her will, which, of course, refers to a disagreement immediately following her death. This clause must contemplate William being dead at that time, for if he were not, then his wife could not receive the $150, which the testatrix says shall be hers and the testatrix adds, by way of explanation, 'she to receive this if she outlives her husband and should be alive when this will is read.' If these events occurred in the sequence in which the testatrix named them, William must be dead when the testatrix dies and when her will is read. I cannot believe that it was the intention of the testatrix that if William survived his wife by one day, his estate would be absolute, but if he predeceased her by one day, his estate should be held to be a contingent one.

"The tendency of the courts is to be cautious in applying to one will the same construction of words given by one court in construing some other will, but rather to give a construction in each case to the particular form of language used and consideration to the circumstances which surround the testator when the particular will to be construed was made. *Hewitt* v. *Green, 77 N. J. Eq. 345, 352.* With this in mind, reference is made to the following decisions of our courts which construe somewhat similar language to mean death in the lifetime of the testator: *Herbert* v. *Tuthill, 1 N. J. Eq. 141; Beatty* v. *Montgomery, 21 N. J. Eq. 324; Burdge* v. *Walling, 45 N. J. Eq. 10; Brown* v. *Lippincott, 49 N. J. Eq. 44; Dawson* v. *Schaefer, 52 N. J. Eq. 341, 344; Dranow* v. *Sherry, 80 N. J. Eq. 448.* In *Fischer* v. *Fischer, 75 N. J. Eq. 74,* a will containing words almost identical with the words in the present will, was construed and the

rule was recognized that where a bequest or devise is made to one person with a gift over 'in case of his death,' or similar words, they must be held to mean in case of death before the death of the testator, unless the context shows that another point of time was intended. I conclude, therefore, that William S. Stedenfeld took a vested interest in one-half of what the testatrix called her 'estate,' which passed under his will to his widow.

"I also find that by her 'estate,' the testatrix meant all the real and personal property which came to her under the will of her husband, except the household effects and that the cash left by her 'outside of the estate,' means such cash as she kept separate from the 'estate,' either in her possession or on deposit in bank. All household effects belonging to the testatrix, such as furniture and other household goods and chattels and cash in possession and in bank, she gave to William S. Stedenfeld absolutely, and this personal property will also pass under his will."

*Mr. Henry P. Bedford,* for the appellants.

*Mr. Joseph S. Smith,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.

*For reversal*—None.