## Shackleford *v.* Dobbs.

Dec. 20, 1952

No. 38583          12 Adv. S. 32          61 So. 2d 669

*Sweat & Sweat,* for appellant.

*Cunningham & Cunningham,* for appellee.

HALL, J.

Mrs. Easter Holley Shackleford, wife of appellant, died leaving a holographic will in the following words:

"STATE OF MISSISSIPPI
TISHOMINGO COUNTY

1. I, Easter Holley Shackleford, being more than twenty-one years of age, and of sound disposing mind and memory, do make and publish this my last will and testament revoking all others.

2. I will and bequeath to my husband W. B. Shackleford my home 'til death or he re-marries; after either to my sister Flora Holley Dobbs.

3. I will and bequeath to my sister Flora Holley Dobbs my one-half interest in the farm that Brother Archie Holley and I own jointly in Prentiss County if it remains in our possession.

4. Above this if I possess any money of my own I bequeath it to sister Flora Holley Dobbs with the following:

My crochet bedspreads;

My machine and quilts in quilt-box; and rest of household fixtures stay for my husband until death or he re-marries then sister can dispose of same.

5. I nominate and appoint as my administratrix of this will by Sister Flora Holley Dobbs, Belmont, Miss., and I hereby vest her with full authority as such admin-

istratrix carry out all the terms, and provisions of this my last will. I hereby will and provide that she be not required to enter into any bond or to make an accounting to any court for her acts of executorship of this last will and testament.''

Mrs. Shackleford left no cash on hand and left no money on deposit in any bank subject to check. She died leaving some postal savings certificates and some United States Savings Bonds. This suit is for construction of Item 4 of the will and the specific question presented is whether the postal savings certificates and bonds passed under the will to Mrs. Dobbs or whether, not being disposed of by the will, the same goes to her husband, appellant herein, who is her sole and only heir at law.

It seems to be almost universally held that ▉▉ ▉ a bequest of money includes money on deposit in some bank subject to check. As was stated by this Court in Martin v. State, 200 Miss. 142, 26 So. 2d 169, ''a bank check cashed in due course is for all practicable purposes, under the business customs of the day, the equivalent of the money itself, being the immediate instrumentality by which the money is obtained.'' And in Woodruff v. Mississippi, 66 Miss. 298, 6 So. 235, we held that the word ''money'' as used in an act of the legislature means ''money which constituted the basis of the general business of the country and was a legal tender for the payment of debts.'' The Woodruff case went to the Supreme Court of the United States and was reversed, but not upon an improper definition of money. Woodruff v. Mississippi, 16 S. Ct. 820, 162 U. S. 291, 40 L. Ed. 973.

In Carter v. Cox, 44 Miss. 148, 155-156, this Court said: ''We learn from Smith's 'Wealth of Nations,' that 'money was originally stamped coin, and afterwards, anything that generally takes its place in buying and selling'. This author also says that, 'to prevent abuses, it was found necessary to fix a public stamp upon certain

quantities of such particular metals as were in those countries commonly made use of to purchase goods.'

"Webster gives this definition of money: '1. Coin, stamped metal, pieces of metal, usually gold, silver or copper, stamped by public authority, and used as the medium of commerce.' '2. Hence any currency usually and lawfully employed in buying and selling as the equivalent of money, as bank notes, and the like.' "

As to the word "money" as used in a will the authorities are in hopeless conflict on the question whether it would carry securities such as are here involved. This conflict is shown in numerous authorities collated in the annotation in 93 A. L. R. beginning on page 514. It is to be noted, however, that some of the apparent conflicts arise because of the use of some other words in addition to the single word "money". Since this is a case of first impression in Mississippi we are free to adopt that line of authorities which appeals to us as being more in line with reason. Therefore we adopt that part of the above mentioned annotation shown in 93 A. L. R. at pages 515-516 as follows:

"The general rule is that a simple bequest, in the absence of anything in the context to show that the word 'money' is used out of its ordinary or popular significance, will not include personal estate in general, but will be confined to money strictly so-called.

"Illinois.—Decker v. Decker (1887) 121 Ill. 341, 12 N. E. 750.

"Kentucky.—Pohlman v. Pohlman (1912) 150 Ky. 679, 150 S. W. 829.

"New Hampshire.—Hancock v. Lyon (1892) 67 N. H. 216, 29 A. 638.

"New Jersey.—Re Rogers (1920) 91 N. J. Eq. 294, 109 A. 16.

"Pennsylvania.—Dodson's Estate (1916) 253 Pa. 344, 98 A. 617; Carr's Estate (1893) 13 Pa. Co. Ct. 643; Smith's Estate (1896) 6 Pa. Dist. R. 329, 19 Pa. Co. Ct. 516.

"England.—Glendening v. Glendening (1846) 9 Beav. 324, 50 Eng. Reprint, 368; Larner v. Larner (1857) 3 Drew. 704, 61 Eng. Reprint, 1072; Langdale v. Whitfield (1858) 4 Kay & J. 426, 70 Eng. Reprint, 178; Barclay v. Maskelyne (1858) 5 Jur. N. S. 12; Cowling v. Cowling (1859) 26 Beav. 449, 53 Eng. Reprint, 971; Montague v. Sandwich (1863) 33 Beav. 324, 55 Eng. Reprint, 392; Re Townley (1884) 50 L. T. N. S. 394; Re Hunter (1908) 25 Times L. R. 19; Re Taylor (1923) 1 Ch. 99, 15 B. R. C. 1-C. A.; Re Gates (1929) 45 Times L. R. 522—C. A.; Re Emerson (1929) 1 Ch. 128; Re Putner (1929) 45 Times L. R. 325; Re Collings (1933) 1 Ch. 920; Re Shaw (1929) W. N. 246.

"Ireland.—Dillon v. M'Donnell (1881 Ir. L. R. 7 Eq. 335; Boardman v. Stanley (1873) Ir. Rep. 7 Eq. 342; Caldbeck v. Stafford (1930) Ir. R. 196.

"In Caldbeck v. Stafford (1930) Ir. R. 196, it was said: 'Looking at all the authorities, and endeavoring to reconcile them as far as possible, the result would appear to be this: The primary meaning of the word "money" is the strict legal meaning in the sense that it is the meaning adopted by lawyers in drafting legal documents, and it is the meaning in which the word must be taken to have been used in any document which the court holds is a document that should be presumed to adopt legal language, unless such construction leads "to some absurdity or some repugnance or inconsistency with the rest of the instrument." But in the case of a layman's will there is no presumption that the word "money" has been used in the clear and unambiguous sense in which it is used by lawyers, and the court may look at once both to the context and to the surrounding circumstances, without being compelled, before doing so, to find some pretext or justification in the context alone. If, however, the result of such a complete survey is entirely negative, then the court, which must make a selection on some ground, can do nothing but decide in favor of the primary or legal meaning, for the simple reason

that it is the primary or legal meaning, and is at least a reason.'

"The word 'money', in its primary and ordinary signification, means cash or coin, but may also be taken to mean bank notes. Barrett v. White (1855) 1 Jur. N. S. (Eng.) 652; Downing v. Townsend (1755) I Ambl. 280, 27 Eng. Reprint, 189; McCullen v. Daughtry (1925) 190 N. C. 215, 129 S. E. 611.

"Thus, a gift in a will of 'money', with nothing in the context to explain or define the sense in which it is used, includes cash, bank notes, and money in bank, but does not include choses in action or securities. Dillard v. Dillard, (1899) 97 Va. 434, 34 S. E. 60.

"The words 'any cash left by me' were held in Stedenfeld v. Stedenfeld (1920) 92 N. J. Eq. 241, 114 A. 406, to mean money in the possession of the testatrix or on deposit in bank."

A well reasoned case which supports our view is Christ's Home v. Mattson, (N. J.) 173 A. L. R. 651, 55 A. 2d 14, from which we quote as follows:

"It is well settled by the greater weight of respectable authority that 'money' means money and money only unless there is in the context of the will something to indicate that the testator intended a more extended meaning. Confining our attention to the specific context of the will before us, we are unable to ascertain therefrom that the word 'money' appearing in the paragraph 'What money there is left to go Christ Home, Warminister Bucks Co., Pa.' was intended by the testatrix to mean anything other than 'money', as it is commonly and universally understood to mean cash in hand or on deposit to the credit of decedent. ██ ██ It has been said repeatedly, the Court's main concern is not so much what the testator meant to say as it is to determine what he meant by what he did say. We cannot speculate as to the testator's intention; we must ascertain that intention from the four corners of the will. March v. Norristown Penn. Trust Com. 123 N. J. Eq. 282, 197

A. 276; New Jersey Title Guarantee, etc., Co. v. Dailey, 123 N. J. Eq. 205, 196 A. 703. It is regrettable, but true, that some confusion exists as to how far the Courts shall go to ascertain the testator's intent. Certain jurisdictions have been, in our opinion, over-liberal in their zeal to ascertain the precise state of the testator's intention and have thus been led into the realm of conjecture and speculation. We hold that the more salutary and reliable rule is that which limits the court's determination of intention to the express words that were used by the testator."

It is argued by appellee that there is a presumption against intestacy which should come to her aid and require such a construction of the will as would award the postal savings certificates and bonds to her. In Williams v. Gooch, 208 Miss. 223, 44 So. 2d 57, the same argument was urged upon us, in response to which we said: ▮▮ "The presumption against intestacy is, after all, only a presumption which, like all other presumptions, must yield to the facts, and it has never been recognized or applied by this Court to the extent of changing or writing a will so as to dispose of property under the will when the provisions of the will itself do not make such disposition." ▮▮ One outstanding fact in this case as shown by the record is that Mrs. Shackleford owned a commercial building which was not disposed of under the will and as to which she died intestate. The presumption against intestacy therefore passes out of the picture.

▮▮ We conclude that the learned chancellor was in error in holding that the word "money" as used in this will served to bequeath to appellee the deceased's postal savings certificates and bonds. The decree will therefore be reversed and judgment entered here.

Reversed and judgment here.

*Roberds, P. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.