PAYNE, J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. On September 11,1996, Willis Wolfe filed his complaint in the Chancery Court of Claiborne County, Mississippi, to confirm title and to cancel cloud on the title to property which he claimed. On October 9, 1996, Elaine Abney, on behalf of the Estate of Exa Wolfe, filed a motion for a protective order in an effort to obtain all original wills and any copies of drafts of wills. On October 15, 1996, the Estate of Exa Wolfe filed an answer and counterclaim.
¶ 2. After reviewing the evidence, the chancellor denied Willis Wolfe’s claim. Feeling aggrieved, Willis appealed.
FACTS
¶ 3. Harold and Exa Wolfe were married and owned property in Claiborne County, Mississippi. From the marriage, two children were born, Elaine Wolfe (Abney) and Willis Wolfe. Harold died and was survived by his wife and children. Harold left a last will and testament, dated September 18, 1976, naming his son, Willis, executor.
¶ 4. On November 15, 1977, Exa conveyed an undivided /k interest in property to Willis. On January 27, 1978, April 29, 1979, March 12, 1980, June 2, 1981, May 18, 1982, February 20, 1983, April 7, 1984, January 24, 1985, November 5,1986, January 21, 1987, and April 3, 1988, Exa conveyed additional undivided % interests in the subject property to Willis. Each of these deeds were witnessed by Exa’s sister, Barbara Ellis. Together, the twelve deeds conveyed one-half of the subject property to Willis Wolfe. None of the twelve deeds were recorded in the land records.
¶ 5. On December 30, 1985, Exa Wolfe, for $10.00 consideration actually paid, sold a separate parcel (from the property listed above) known as “Anchuca” or “Primrose Place” to Willis and this deed was recorded in the land records.
¶ 6. On March 24, 1988, Exa signed a last will and testament. In pertinent part, this will stated:
I hereby give and devise unto my son, Willis W. Wolfe, it, all of that real property owned by me at the time of my death situated approximately one mile southeast of Port Gibson, Mississippi, and comprising, at the death of my husband, approximately 927 acres. I have, since the death of my husband, conveyed some of the acreage during my lifetime to my son, and I intend to convey more of this acreage during my lifetime. However, should any of this real property be owned by me at the time of my death, then I hereby give and devise *790 said real property unto my son, Willis W. Wolfe, II.
The will of March 24,, 1988, was revoked and rescinded by .the last will and testament of Exa Wolfe, -dated September 2, 1994. .Exa died leaving a last will and testament which purports to devise to, her daughter, Elaine, the property which was conveyed to Willis by the above described twelve deeds. This last will was admitted into probate in Warren County, Mississippi.
¶ 7. Willis filed an objection to the last will of his mother, seeking to have-the will canceled solely as it relates to' the undivided one-half interest which he claimed under the twelve deeds. Willis further seeks to have the fee simple title to said undivided one-half interest confirmed in himself. By counterclaim, the Estate of Wolfe brought issue with the purported conveyance of Anchuca to Willis by his mother.
¶ 8. On November 13, 1996, Willis filed five requests for admissions. The Estate of Wolfe responded to the requests on January 3, 1997., However, the responses were not timely filed. Pursuant to Mississippi ’Rules of Civil Procedure 36, the requests for admissions were admitted.
STANDARD OF REVIEW
¶ 9. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor’s’findings unless the court’s actions were manifestly wrong, the court abused its discretion, or the court applied, an erroneous legal standard. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997).
ANALYSIS AND ISSUES PRESENTED
I. WHETHER RECORDATION OF THE 12 DEEDS WAS REQUIRED.
¶ 10. Willis first argues the validity of the deeds, each -conveying a )k interest in the property. None of these deeds were recorded in the chancery clerk’s office. According to Willis, Miss.Code Ann. § 89-1-1 (Rev.1994) provides that interests in land are conveyed by writings signed and delivered and that such writings shall have the effect of transfer, according to their terms and the title of the person signing and delivering it. As stated by Willis, the recording statute becomes applicable only in situations involving a third-party purchaser for valuable consideration without notice.. See Miss. Code Ann. § 89-5-1 (Rev.1994). Supplementing his statutory argument, Willis cites Taylor v. Welch, 609 So.2d 1225 (Miss.1992) to support his contention that a deed need not be recorded to be valid for purposes of delivery of the deed. Cited within Taylor is McMillan v. Gibson, 222 Miss. 408, 76 So.2d 239 (1954). In McMillan, the Mississippi Supreme Court stated that “[T]he primary question in determining whether a valid delivery of a deed took place is the intention of a grantor.” Id.
¶ 11. According to Willis, the original twelve deeds from Exa B. Wolfe were personally signed by her and witnessed by Exa’s sister. These deeds were delivered by Exa to her son, Willis, who remained in possession of the deeds. Thus, Willis argues, between Exa and himself, a valid conveyance of an undivided one-half interest in the subject property took place.
¶ 12. Elaine (Abney) Wolfe and the Estate of Wolfe agree that the deeds are valid as between Exa and Willis, thus they do not argue the obvious. In fact, the ruling of the chancellor stated: “[t]here is no question as to whether the twelve (12) conveyances, each conveying an undivided one twenty-fourth (/k) interest, between Exa B. Wolfe and Willis W. Wolfe were signed by her and delivered to him.” The Estate of Wolfe argues that the issue is not whether the conveyance was valid, but whether Exa had the right to legally convey by gift property to another.
¶ 13. Having said the above, we now review whether the last will and testament of Harold Wolfe conferred on Exa Wolfe the authority to give the property in question to whomever she pleased.
*791 II. WHETHER THE LAST WILL AND TESTAMENT OF HAROLD WOLFE GRANTED EXA WOLFE THE AUTHORITY TO DISPOSE OF THE PROPERTY IN QUESTION AS SHE DEEMED FIT.
¶ 14. It is elemental that when construing the will of a testator, the function of the chancellor, as well as that of this Court, is to determine and respect the intent of the testator. Estate of Dedeaux, 584 So.2d 419, 421 (Miss.1991) (citing Yeates v. Box, 198 Miss. 602, 609, 22 So.2d 411, 413 (1945)). It was not the function of the chancellor, nor is it of this Court, to determine a just and fair disposition of (the) estate, but instead to respect his (testator’s) intent. Yeates, 22 So.2d at 413. In determining the testator’s intent, in the absence of ambiguity, the Mississippi Supreme Court, as well as this Court, is limited to the “four corners” of the will itself. Tinnin v. First United Bank of Mississippi 502 So.2d 659, 663 (Miss.1987). Furthermore, the four cardinal rules of construction are:
First, the prime inquiry is the intention of the testatrix [testator]....
Second, the law favors the vesting of the estates at the earliest possible moment. ...
Third, in the absence of a clear intent to thé contrary, that construction should be adopted which will result in a just and reasonable disposition of the property....
Fourth, life tenancies are not favored.
In Raworth’s Estate, 211 Miss. 780, 785, 52 So.2d 661, 662-63 (1951). This procedure for construing wills was affirmed in a recent Mississippi Supreme Court case entitled Matter of Estate of Homburg v. Clark, 697 So.2d 1154, 1157-58 (Miss.1997).
¶ 15. Turning toward the will, we find that the last will and testament of Harold Wolfe, dated September 18, 1976, expressly states that Exa B. Wolfe “shall have the power to convey a fee simple title in such property.” Item III (the clause from which this litigation began) states:
All the rest and residue of my estate, real personal and mixed and wheresoever situated, I give, devise and bequeath to my wife, Exa, for and during the term of her natural life.
My wife shall have the power to lease (including power to execute oil and gas leases) any property passing to her as a life tenant and for terms beyond her life expectancy; she shall have the power to convey a fee simple title in such property (in any part thereof,, including the power to sell timber), during her lifetime; and such conveyance(s) may be by public or private sale (without the necessity of court approval and without bond), upon such terms, and conditions, as she at her sole and absolute discretion may deem most advantageous.
The proceeds received by my wife from the sale of any property passing under this paragraph shall be kept by her in a single fund, separate from other property held by her. She shall be entitled to invest and reinvest the proceeds in legal investments allowed in the State of Mississippi; and be entitled to the dividends, interest and other profits from such investments during her lifetime.
My wife shall be entitled to possession of all property in which she holds a life estate and shall not be required to furnish bond or security for any of it. She shall not be liable for loss or destruction of any property passing under this section nor for waste.
¶ 16. Willis believes that his mother, Exa, is entitled by the wording above, to 'convey title to any property passing to her under the will in fee simple. He argues that “fee simple” is absolute — clear of any limitation or restrictions.
¶ 17. Willis also emphasizes that portion of Harold Wolfe’s last will and testament which states that Exa Wolfe shall be authorized to convey in fee simple title property “upon such terms and conditions as she in her sole and absolute discretion may *792 deem most advantageous.” Quoting directly from Willis’s .brief, we find this statement:
The law in Mississippi is unquestioned and has been settled for a very long time, that a life tenant may convey fee simple title in real estate where the instrument creating the life tenancy itself grants the power of conveyance.
¶ 18. As authority for the proposition that a life tenant may convey fee simple title to real estate when authorized to do so, Willis cites 51 Am.Jur.2d, Life Tenants and Remaindermen, at Section 81. This section states on page 314 the following:
The question whether a life tenant of real estate has the power to convey the fee depends upon the terms of the Will or other iristruments creating the life estate and future interest. An express power of sale is not unusual. For example, instruments creating life estates frequently authorize a sale and direct that the proceeds be reinvested in investments to be held subject to a life estate and future interests ... the most common instance of the power of a legal life tenant to sell not merely the life interest, but also the fee in real property, entire interest and personalty, arises where the instrument creating the interest gives the life tenant the power to anticipate or enjoy the principal of the property, as for comfort, maintenance and support.
As argued by Willis,' Harold Wolfe granted to Exa the power to convey'unrestricted fee simple title to the land, and she was free to dispose of this property on such terms and conditions as she saw fit. Of equal importance to the argument above is the intent of the testator. According to Willis’s interpretation of his .father’s will, Exa was not accountable to anyone for anything and was “not liable for the loss or destruction of any property passing under this section nor for waste.”
¶ 19. After reading Willis’s argument, the issue remains whether Exa was authorized by the last will and testament of Harold Wolfe to make a gift of the property to her son, not whether she had the right to sell the property in fee during her lifetime. Having said that, we now turn toward analyzing Item III from Harold Wolfe’s last will and testament.
¶ 20. We find that the supreme court has stated in In Re Vail’s Will, 228 Miss. 151, 158, 87 So.2d 68, 72 (1956) the following:
In undertaking to construe the language of the Will before us, we are guided by well recognized rules and principles. One of these is that the prime inquiry is the intention of the testator, and another is that life tenancies are not favored. In Re Raworth’s Estate, 211 Miss. 780, 52 So.2d 661. Still another well-recognized principle is that an absolute devise may not be reduced or diminished to a life estate by any succeeding language that is inferior in clarity and certainty to' the devising clause. -
It has been said that in the construction of a will, the court’s main concern is not so much what the testator meant to say as it is to determine what he meant by what he did say. Shackleford v. Dobbs, 216 Miss. 75, 82, 61 So.2d 669, 671 (1952).
¶ 21. Guided by the rules and principles set forth above, the chancellor was obligated to ascertain the intention of the testator — Harold Wolfe. The chancellor’s opinion emphasized Willis’s failure to argue the complete reading of Item III of the last will and testament of his father. As noted by the chancellor, Harold not only intended to give his wife, Exa, a life estate in the subject property but he also intended to give Exa great latitude for the purpose of maximizing the benefits to be derived from such a life estate.
¶22.' In furtherance of this intention, Harold provided that Exa could lease the property and that Exa could sell the property and convey fee simple to another, but that such a conveyance was to occur as the result of a public or private sale. As a further expression of Harold Wolfe’s intentions, the chancellor noted that Harold di *793 rected that “the proceeds received by my wife from the sale of any piroperty ... shall be kept by her in a single fund.” According to the chancellor, “[i]t is' ... clear that Harold did not intend for the property to be conveyed absent a sale for consideration that could be kept in a single, separate fund ... during her lifetime.”
AMENDED JUDGMENT
¶ 23. Willis further argues that the Anehuca Plantation, or Primrose Place, was deeded to him by his mother on December 30,1985, by special warranty deed. The deed was recorded and states that $10 consideration and other good and valuable consideration was paid. Willis is certain that a sale took place regarding this property.
¶ 24. On November 25, 1996, Elaine Ab-ney filed a supplement to the original counter-claim, seeking cancellation of the December 30, 1985 conveyance. On June 3, 1998, the chancellor supplemented his judgment, noting that the transfer of property to Willis from Exa was void — on the same basis as the chancellor had held void each of the twelve unrecorded deeds listed above. Specifically, the chancellor stated that there was no “bona fide sale of said property.”
¶ 25. We agree with the chancellor as stated in our opinion above.
CONCLUSION
¶ 26. Under the standard of review set forth above, we are limited in our review of the situation presented today. Restrained by the standard of review, we stand by the chancellor in his decision. After reviewing the record, we' find that the last will and testament of Harold Wolfe empowered Exa to make a conveyance in fee simple, if that conveyance was in furtherance of. a sale. No gift of the property was authorized either explicitly or implicitly by the language of the Will.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF CLAIBORNE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND THOMAS, JJ., CONCUR.